## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| CAMERON GIBEL, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. 23-2050 |
| | ) | |
| v. | ) | District Judge W. Scott Hardy |
| | ) | Magistrate Judge Maureen P. Kelly |
| IRON CUMBERLAND, LLC | ) | |
| *doing business as* | ) | Re: ECF No. 20 |
| IRON SENERGY, | ) | |
| | ) | |
| Defendant. | ) | |

## REPORT AND RECOMMENDATION

### I.    RECOMMENDATION

For the reasons that follow, it is respectfully recommended that the Motion for Summary Judgment (the "Motion") filed on behalf of Defendant Iron Cumberland, LLC ("Iron Cumberland"), ECF No. 20, be denied.

### II.    REPORT

#### A.    FACTUAL AND PROCEDURAL BACKGROUND

##### 1.    Procedural History

Plaintiff Cameron Gibel ("Gibel") commenced this class action lawsuit on October 30, 2023, in the Court of Common Pleas of Allegheny County, Pennsylvania, seeking damages against Iron Cumberland for violations of the Pennsylvania Minimum Wage Act ("PMWA"), 43 P.S. §§ 333.101, *et seq*. ECF No. 1-1.

Iron Cumberland timely removed this action to this Court on the basis of federal question jurisdiction, 28 U.S.C. § 1331; diversity jurisdiction, 28 U.S.C. § 1441; and Class Action Fairness Act jurisdiction, 28 U.S.C. §§ 1332(d), 1441, and 1453, on November 30, 2023. ECF No. 1. Iron Cumberland filed an Answer to the Complaint on December 7, 2023. ECF No. 5.

1

Following the initial case management conference on January 9, 2024, ECF No. 14, the Court entered a summary judgment scheduling order, ECF No. 16. In accordance with that order, the parties filed a Joint Concise Statement of Material Facts on January 29, 2024. ECF No. 19. On January 31, 2024, Iron Cumberland filed the instant Motion for Summary Judgment, accompanying brief, and Concise Statement of Material Facts, arguing that, as a matter of law, Gibel's claim is preempted by Section 301(a) of the Labor Management Relations Act, 29 U.S.C. § 185(a). ECF Nos. 20, 21, 22.

On February 23, 2024, Gibel notified the Court that he intended to conduct limited discovery to assist in the preparation of his opposition to the Motion. ECF No. 25. Gibel filed a Brief in Opposition to Defendant's Motion for Summary Judgment and Response to Defendant's Concise Statement of Material Facts on April 5, 2024. ECF Nos. 29, 30.

Iron Cumberland filed a Reply Brief on April 18, 2024. ECF No. 32.

Gibel filed a Notice of Supplemental Authority on May 28, 2024. ECF No. 33.

The Motion for Summary Judgment is now ripe for consideration.

### 2.    Undisputed Material Facts

Gibel was employed by Iron Cumberland from February 2022 until December 2022 and worked 40 or more hours in at least a single week during his employment. ECF No. 19 ¶¶ 1, 5. For the duration of his employment, he was a member of the United Mine Workers of America Union ("UMWA"). Id. ¶ 2. The UMWA and Iron Cumberland entered into a collective bargaining agreement titled the Coal Wage Agreement of 2020 ("the CBA"). Id. ¶ 3. The CBA was effective for the duration of Gibel's employment with Iron Cumberland. Id. ¶ 4.

### 3.    Legal Claims

In the Complaint, Gibel alleges that he and other hourly employees were required to arrive at the Cumberland Mine prior to the start of their paid shift. ECF No. 1-1 ¶ 10. They had to enter the mine facility and walk to a locker room where they donned certain personal protective equipment ("PPE") and obtained batteries for their radio and cap lights. Id. Next, the employees walked to an attendance scanner near an elevator, which would take them to the mine shaft. Id. Employees often had to wait in line to obtain their PPE and/or log into the attendance scanner. Id. These pre-work activities could take up to twenty minutes to complete, and Gibel and other employees were not paid any wages (including overtime wages) for these activities. Id.

At the end of the workday, Gibel and other employees had to exit the elevator and clock out. Id. ¶ 11. They then returned to the locker room to doff and return their PPE. Id. This could take between five and ten minutes to complete, and Gibel and other employees were not paid any wages (including overtime wages) for these activities. Id.

The Complaint contains a single legal claim. Gibel alleges that the PMWA entitles employees to compensation for "all hours worked, [including] time during which an employee is required to be on the premises of the employer . . . regardless of whether the employee is actually performing job-related duties while on the premises." Id. ¶ 22. Gibel asserts Iron Cumberland violated the PMWA, because it failed to pay him and other class members wages (including overtime wages) for the aforementioned activities. Id. ¶¶ 22-24.

### B.    STANDARD OF REVIEW

Summary judgment is properly entered "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); see, e.g., Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). Summary judgment

may be granted against a party who fails to adduce facts sufficient to establish the existence of any element essential to that party's case, and for which that party will bear the burden of proof at trial. <u>Celotex</u>, 477 U.S. at 322. The moving party bears the initial burden of identifying evidence which demonstrates the absence of a genuine issue of material fact. Once that burden has been met, the non-moving party must set forth "specific facts showing that there is a genuine issue for trial" or the factual record will be taken as presented by the moving party and judgment will be entered as a matter of law. <u>Matsushita Elec. Indus. Corp. v. Zenith Radio Corp.</u>, 475 U.S. 574, 587 (1986). An issue is genuine only if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248 (1986). The Court of Appeals for the Third Circuit has held that "where the movant bears the burden of proof at trial and the motion does not establish the absence of a genuine factual issue, the district court should deny summary judgment even if no opposing evidentiary matter is presented." <u>National State Bank v. Federal Reserve Bank</u>, 979 F.2d 1579, 1582 (3d Cir. 1992).

In following this directive, a court must take the facts in the light most favorable to the non-moving party, and must draw all reasonable inferences and resolve all doubts in that party's favor. <u>Hugh v. Butler County Family YMCA</u>, 418 F.3d 265, 266 (3d Cir. 2005); <u>Doe v. County of Centre, Pa.</u>, 242 F.3d 437, 446 (3d Cir. 2001).

### C.    DISCUSSION

#### 1.    Relevant Law

##### a.    Pennsylvania Minimum Wage Act

The wages of employees in the United States are governed by both federal and state law. <u>Beauregard v. Broadway Elec. Serv. Corp.</u>, No. 21-1600, 2022 WL 2293969, at *4 (W.D. Pa. June 24, 2022). While the Fair Labor Standards Act of 1938 (the "FLSA"), 29 U.S.C. § 201 *et seq*. 43

P.S. §§ 333.101-333.115, establishes "a national floor under which wage protections cannot drop," it does not preclude states from enacting more beneficial wage and hour laws. Chevalier v. Gen'l Nutrition Ctrs., Inc., 220 A.3d 1038, 1055 (Pa. 2019); Ballard v. BHI Energy, Inc., No. 22-115, 2022 WL 4464959, at *3 (W.D. Pa. Sept. 26, 2022).

The Pennsylvania General Assembly enacted the PMWA to provide "more generous protections" to employees than the FLSA. Chevalier, 220 A.3d at 1055 (citation omitted).[1] The PMWA "manifests th[e] Commonwealth's strong public policy protecting an employee's right to be adequately compensated for all hours for which they work." Heimbach, 255 A.3d at 200 ("The evils of unreasonable and unfair wages as they affect some employe[e]s employed in the Commonwealth of Pennsylvania are such as to render imperative the exercise of the police power of the Commonwealth for the protection of industry and of the employe[e]s employed therein and of the public interest of the community at large."); see also 43 P.S. § 333.101. "[T]he PMWA does not require the existence of a contract to establish a claim." Soles v. Zartman Const., Inc., No. 13-29, 2014 WL 3557197, at *2 (M.D. Pa. July 18, 2014). A plaintiff may bring a claim under the statute without alleging the existing of a contract. Id.

The PMWA requires that "[e]very employer shall pay to each of his or her employe[e]s wages for all hours worked," and employees "shall be paid for overtime not less than one and one-

---

[1] The PMWA largely mirrors the FLSA. LaRue v. Great Arrow Builders LLC, No. 19-932, 2020 WL 5747818, at *11 (W.D. Pa. Sept. 25, 2020). As such, Pennsylvania and federal courts look to FLSA cases for guidance when interpreting substantially parallel provisions of the PMWA. Razak v. Uber Techs., Inc., 951 F.3d 137, 142 (3d Cir. 2020) (citing Dep't of Lab. & Indus. v. Stuber, 822 A.2d 870, 873 (Pa. Cmwlth. 2003), aff'd, 859 A.2d 1253 (Pa. 2004)). Nevertheless, given "the General Assembly's declared policy objective in enacting the PMWA," the Supreme Court of Pennsylvania has several times declined to "follow the interpretation of similarly applicable provisions of the federal FLSA" when interpreting more favorable provisions of the PMWA. Heimbach v. Amazon, Inc., 255 A.3d 191, 201 (Pa. 2021) (citing Chevalier, 220 A.3d at 1055-58, and Bayada Nurses, Inc. v. Com., Dep't of Lab. & Indus., 8 A.3d 866, 882-83 (2010)). In those cases, the Supreme Court of Pennsylvania emphasized that "the PMWA must be interpreted in accordance with its owns specific terms," which requires "examin[ing] the text of the PMWA, as well as the relevant Department of Labor and Industry regulations." Id. at 202.

half times the employee's regular rate . . . for hours in excess of forty hours in a workweek." 43

P.S. § 333.104(a), (c). <u>Ballard</u>, 2022 WL 4464959, at *3. The statute does not itself define "hours

worked," <u>Heimbach</u>, 255 A.3d at 203, but the term has been defined by regulation:

> *Hours worked*—The term includes [1] time during which an employee is required
> by the employer to be on the premises of the employer, [2] to be on duty or to be at
> the prescribed work place, [3] time spent in traveling as part of the duties of the
> employee during normal working hours and [4] time during which an employee is
> employed or permitted to work; provided, however, that time allowed for meals
> shall be excluded unless the employee is required or permitted to work during that
> time, and provided further, that time spent on the premises of the employer for the
> convenience of the employee shall be excluded.

34 Pa. Code § 231.1(b) (numbers added); <u>Beauregard</u>, 2022 WL 2293969, at *5.

According to the plain language of the regulation, "all time which an employee spends

performing any one of these four types of activity constitutes hours worked." <u>Heimbach</u>, 255 A.3d

at 204; <u>Beauregard</u>, 2022 WL 2293969, at *5. With respect to the first activity, "th[e] regulation

specifically designates **all** 'time during which an employee is required by the employer to be on

the premises of the employer' as compensable hours worked, regardless of whether the employee

is actually performing job-related duties while on the premises." <u>Heimbach</u>, 255 A.3d at 204. For

example, the Supreme Court of Pennsylvania held in <u>Heimbach</u> that "time spent on an employer's

premises waiting to undergo, and undergoing, mandatory security screening constitutes 'hours

worked' under the PMWA." <u>Id.</u> at 193, 204; <u>Beauregard</u>, 2022 WL 2293969, at *5.

To state a claim for unpaid wages under the PMWA, a plaintiff must prove three elements:

(1) the plaintiff was an employee; (2) the defendant was the plaintiff's employer; and (3) the

defendant failed to pay the plaintiff the wage required by the PMWA. <u>See</u> 43 P.S.

§ 333.103 (defining "employer" and "employe[e]"); *id.* § 333.104 (setting forth minimum and

overtime wages); <u>Beauregard</u>, 2022 WL 2293969, at *5. <u>See also, e.g.</u>, <u>Wintjen v. Denny's, Inc.</u>,

No. 19-69, 2021 WL 5370047, at *12 (W.D. Pa. Nov. 18, 2021).

###### b.    Labor Management Relations Act

Section 301(a) of the Labor Management Relations Act of 1947 ("Section 301" and

"LMRA," respectively) provides:

> Suits for violation of contracts between an employer and a labor organization
> representing employees in an industry affecting commerce as defined in this
> chapter, or between any such labor organizations, may be brought in any district
> court of the United States having jurisdiction of the parties, without respect to the
> amount in controversy or without regard to the citizenship of the parties.

29 U.S.C. § 185(a).

As interpreted by the United States Supreme Court, this provision has both a jurisdictional

and substantive effect. Textile Workers Union of Am. v. Lincoln Mills of Ala., 353 U.S. 448, 450-

51 (1957); see also Tex. Indus., Inc. v. Radcliff Materials, Inc., 451 U.S. 630, 642-43 (1981). First,

it vests federal district courts with jurisdiction over certain labor-management disputes. Textile

Workers, 353 U.S. at 450; see also Textron Lycoming Reciprocating Engine Div. v. United Auto.,

523 U.S. 653, 656-57 (1998) ("By its terms, this provision confers federal subject-matter

jurisdiction only over 'suits for violation of contracts.'"). And second, it "authorizes federal courts

to fashion a body of federal law for the enforcement of . . . collective bargaining agreements and

includes within that federal law specific performance of promises to arbitrate grievances under

collective bargaining agreements." Textile Workers, 353 U.S. at 451; see also id. at 456 ("The

substantive law to apply in suits under § 301(a) is federal law, which the courts must fashion from

the policy of our national labor laws."). Beauregard, 2022 WL 2293969, at *6.

The Supreme Court has explained that "the subject matter of § 301(a) is peculiarly one that

calls for uniform law." Local 174, Teamsters, Chauffeurs, Warehousemen & Helpers of Am. v.

Lucas Flour Co., 369 U.S. 95, 103 (1962) (internal quotations omitted). Otherwise, "[t]he

possibility that individual contract terms might have different meanings under state and federal

law would inevitably exert a disruptive influence upon both the negotiation and administration of collective agreements." Id. This need for uniformity gave rise to the doctrine of complete preemption under the LMRA. See Local 174, Teamsters, Chauffeurs, Warehousemen & Helpers of Am. v. Lucas Flour Co., 369 U.S. 95, 103-04 (1962) (citation omitted); Guidas v. United States Steel Corp., No. 24-305, 2024 WL 2729905, at *6 (W.D. Pa. May 28, 2024).

"Section 301's preemptive effect over state law claims has evolved over the years." Ballard, 2022 WL 4464959, at *4. In Allis-Chalmers Corp. v. Lueck, 471 U.S. 202 (1985), the Supreme Court described the limits of Section 301's preemptive impact on state law claims as follows:

> Of course, not every dispute concerning employment, or tangentially involving a provision of a collective-bargaining agreement, is pre-empted by § 301 . . . . Section 301 on its face says nothing about the substance of what private parties may agree to in a labor contract. Nor is there any suggestion that Congress, in adopting § 301, wished to give the substantive provisions of private agreements the force of federal law, ousting any inconsistent state regulation. Such a rule of law would delegate to unions and unionized employers the power to exempt themselves from whatever state labor standards they disfavored. Clearly, § 301 does not grant the parties to a collective-bargaining agreement the ability to contract for what is illegal under state law.

Id. at 211-12. Accordingly, the Supreme Court held that Section 301 preemption is limited to instances in which the resolution of a state law claim "is substantially dependent upon analysis of the [collective-bargaining agreement's] terms." Id. at 220. The term "substantially dependent" has been interpreted as meaning "inextricably intertwined." Id. at 213.

The Supreme Court later explained Section 301 preemption in Lingle v. Norge Div. of Magic Chef, Inc., 486 U.S. 399 (1988), holding "that an application of state law is pre-empted by [Section 301] only if such application requires the interpretation of a collective-bargaining agreement." Id. at 413. The Supreme Court noted therein that, "even if dispute resolution pursuant to a collective-bargaining agreement, on the one hand, and state law, on the other, would require addressing precisely the same set of facts, as long as the state-law claim can be resolved without

interpreting the agreement itself, the claim is 'independent' of the agreement for § 301 pre-emption purposes." Id. at 409-10.

Moreover, mere consultation of a collective bargaining agreement does not trigger LMRA preemption. "[W]hen the meaning of contract terms is not the subject of dispute, the bare fact that a collective-bargaining agreement will be consulted in the course of state-law litigation plainly does not require the claim to be extinguished." Livadas v. Bradshaw, 512 U.S. 107, 124 (1994). "[A]n application of state law is preempted by § 301 of the [LMRA] only if such application requires the interpretation of a collective-bargaining agreement." Lingle, 486 U.S. at 413 (emphasis added). Thus, a state law claim that merely addresses similar facts as those involving a CBA, or that simply entails consultation of a related CBA, does not depend on "interpretation" of that CBA, and is therefore not preempted by Section 301.

## 2.    Legal Analysis

Iron Cumberland asserts in the Motion for Summary Judgment and supporting Brief that the resolution of Gibel's claim in the instant case either relies on or requires interpretation of the CBA on three different grounds. ECF No. 21 at 5-6. Therefore, the claim is preempted by Section 301, and Iron Cumberland is entitled to judgment as a matter of law. Id. at 21. The Court will address each ground in turn.

### a.    Unpaid Wages and Overtime Wages

In its supporting Brief, Iron Cumberland argues that because Gibel seeks "unpaid wages" and alleges that his wages fell below the statutory minimum, his claim is founded on rights created by the CBA. Id. at 8. It asserts that by seeking "compensable hours" for which he did not receive payment, Gibel must establish a contractional entitlement to the pay; this requires the Court to interpret the CBA to determine whether Gibel was actually entitled to the wages. Id. at 9. Thus,

the claim is preempted by Section 301. Id. Iron Cumberland also argues that Gibel's claim for "overtime wages" is similarly founded on rights created by the CBA and would require interpretation of the CBA. Id. at 10.

In the Brief in Opposition, Gibel responds that the Complaint does not reference the CBA, nor does he allege that Iron Cumberland violated the CBA. ECF No. 29 at 12-13. Instead, the claim is based solely the statutory right for unpaid wages established under the PMWA. Id. at 13. Further, he avers that he is not seeking to recover unpaid "straight-time" wages for any time that falls below the PMWA's 40-hour weekly overtime threshold, only overtime wages. Id. at 2. Gibel asserts that to calculate any unpaid wages, he will rely on the PMWA's mandate that employees be paid for all hours of work, which, in his case, is overtime premium pay in excess of 40 hours in a single week. Id. at 16-17. Gibel also states that he will rely on workplace policies outside of the CBA to establish that the alleged unpaid activities constitute compensable "hours worked." Id. at 14.

In the Reply Brief, Iron Cumberland asserts that Gibel's argument that he is not seeking "straight-time" unpaid wages demonstrates that he acknowledges his claim is preempted by Section 301. ECF No. 32 at 2. Iron Cumberland also argues that the workplace policies Gibel will rely on must be interpreted as part of the CBA. Id. at 3.

### i. The Complaint is not founded on rights created by the CBA.

Iron Cumberland argues that the Complaint is founded on rights created by the CBA, and, therefore, Gibel's PMWA claim is preempted by Section 301. ECF No. 21 at 9-12. For the reasons that follow, this argument is unavailing.

As discussed at length in Section II.C.1.a, the PMWA bestows rights to employees independent of any contract. See Soles, 2014 WL 3557197, at *2 ("The PMWA does not require a contract, and in fact the existence of a contract that fails to conform to the PMWA, such as one

containing an agreement to a wage below the applicable minimum wage, does not excuse noncompliance."). Iron Cumberland is correct that preemption is required when a claim requires interpretation of a CBA, even if the claim does not invoke the CBA on the face of the complaint. ECF No. 21 at 7. However, it is well established that "a defendant does not have the right to dictate the manner in which a plaintiff litigates the case. As the Supreme Court has recognized in the . . . area of federal preemption, a plaintiff remains master of his complaint, and can make choices accordingly." Hereford v. Broomall Operating Co. LP, 575 F. Supp. 3d 558, 564 (E.D. Pa. 2021) (citing Caterpillar Inc. v. Williams 482 U.S. 386, 393 (1987)); Caterpillar, 482 U.S. at 394-95 ("It is true that respondents, bargaining unit members at the time of the plant closing, possessed substantial rights under the collective agreement, and could have brought suit under § 301. As masters of the complaint, however, they chose not to do so."). Iron Cumberland may contend that the Complaint is founded on rights created by the CBA, but that is not what Gibel pled. Gibel asserts a single claim for wages arising out of the PMWA, not the CBA. ECF No. 1-1 ¶¶ 20-24.

Iron Cumberland cites Braun v. Wal-Mart Stores, Inc., 24 A.3d 875, 954 (Pa. Super. 2011) and Wheeler v. Graco Trucking Corp., 985 F.2d 108, 113 (3d Cir. 1993), for the proposition that Gibel's claim may only arise out of a contractual entitlement for compensation, but this argument is misplaced. ECF No. 21 at 9-10. Braun and Wheeler involved claims brought under the Wage Payment and Collection Act ("WPCL"), not the PMWA. Braun, 24 A.3d at 883; Wheeler, 985 F.2d at 113.

A PMWA claim has an independent statutory basis for its cause of action, outside of any contract. Larue, 2020 WL 5747818, at *11 ("The rights afforded to employees under the PMWA are independent of any contract right arising under the CBA."). The WPCL, on the other hand, "does not establish any substantive rights; it simply provides a statutory remedy for an employee

11

'when the employer breaches a contractual obligation to pay earned wages.'" Szewczyk v. United Parcel Serv., Inc., No. 19-1109, 2019 WL 5423036, at *5 (E.D. Pa. Oct. 22, 2019) (citing Weldon v. Kraft, Inc., 896 F.2d 793, 801 (3d Cir. 1990)). See also Vasil v. Dunham's Athleisure Corp., No. 14-690, 2015 WL 1296063, at *5 (W.D. Pa. Mar. 23, 2015) ("[V]iolations of . . . the PMWA give rise to a statutory remedy, not one grounded in the employment contract itself[,] and recovery of overtime wages under the WPCL must be based in the contract itself. . . . [R]ecovery under the WPCL is appropriate only if it is based in a 'contractual obligation.'"). In fact, in Wheeler, the Third Circuit held that the plaintiff's "state-law claim for wages allegedly due under the collective bargaining agreement was preempted. [Plaintiff's] claim is based squarely on the terms of the collective bargaining agreement and therefore is governed exclusively by federal law." Id. at 113. Gibel is not seeking wages due under the CBA, but, rather, those he may be entitled to under the PMWA. ECF No. 1-1 ¶¶ 20-24.

The other cases that Iron Cumberland relies on are similarly inapposite. Szewczyk, 2019 WL 5423036, at *5[2] and Hughes v. United Parcel Servs., Inc., No. 14-3822, 2015 WL 1021312, at *4 (E.D. Pa.  March 6, 2015), aff'd, 639 F. App'x 99 (3d Cir. 2016)[3] both concerned WPCL claims, in which the plaintiffs' claims must arise out of their respective CBAs. As discussed, this is not so in the instant case. Townsend v. BC Nat. Chicken LLC, No. 06-4317, 2007 WL 442386, at *5 (E.D. Pa. Feb. 2, 2007) is also distinguishable. There, the issue was whether the time

---

[2] The WPCL claim in Szewczyk 2019 WL 5423036, at *5, was dismissed because it "entirely dependent upon an analysis and interpretation of the terms of the CBA," and therefore preempted by Section 301. The PMWA claim was not dismissed. Id. at *4.

[3] "Based upon the allegations in [the] Complaint, it is clear that their state law claims – breach of contract, unjust enrichment, and violation of the WPCL – are squarely dependent upon the CBA. Indeed, each of Plaintiffs' claims is based upon allegations that their employment relationship with [the defendant] is governed by the CBA." Hughes 2015 WL 1021312, at *4.

employees spent donning and doffing personal protective equipment was compensable under the FLSA and the PMWA. Id. The court resolved the FLSA claim on the ground that the CBA provided for twelve minutes per week for "wash up time," and thus interpretation was required in order to determine whether the union and employer had bartered the time in question as part of the agreement on wash up time, thereby making the FLSA claim contingent on the application of the CBA. Id.

For these reasons, the Complaint in the instant case is not founded on rights created by the applicable CBA.

### ii. The CBA does not require interpretation to determine the amount owed for "overtime hours."

Iron Cumberland also argues that the CBA must be "interpreted" to resolve the amount that Gibel alleges he is owed for in "unpaid wages" and "overtime hours" pursuant to the PMWA. ECF No. 21 at 12.[4] After careful consideration, the Court finds this argument unavailing.

Iron Cumberland points to Article IV of the CBA, "Wage and Hours," as well as Article XIX, "Classification," §§ (a), "Working in Classification," and (b),"Classification Requirement," to demonstrate that the CBA must be interpreted to resolve Gibel's claim. ECF No. 21 at 9, 12. Article IV is approximately four pages long. ECF No. 19-1 at 27-30. It includes information regarding the specific hours of work for each shift, as well as detailing when an employee would

---

[4] The Court notes that in the initial Brief in support of the Motion for Summary Judgment, Iron Cumberland argues that Gibel is seeking both "unpaid wages" and "overtime wages." ECF No. 21 at 5. However, Gibel clarifies in the Brief in Opposition that he only seeks overtime wages. ECF No. 29 at 2. Iron Cumberland then argues in the Reply Brief that Gibel's statement that he is not seeking unpaid wages implicitly admits that the claim is preempted by Section 301. ECF No. 32 at 2.

This distinction is ultimately inconsequential to the Court's analysis. Regardless of whether Gibel's claim is for "unpaid hours" or "overtime hours," this claim is still based on the statutory right of payment for "hours worked" under the PMWA. See Section III.C.2.a.i. It is not pursued as breach of the CBA for unpaid wages under the WPCL. Moreover, it is also immaterial whether the claim is for unpaid hours or overtime hours, as the same sections of the CBA must be examined to determine whether the CBA requires interpretation to resolve Gibel's claim.

be compensated with weekend or premium pay. Id. It also includes a section entitled "Standard Daily Wage Rate." Id. at 20. This section then references Appendices A and B, which are charts setting out the pay rate of individual employees based on his or her grade. Id. at 30, 112-113. The text of Article XIX, §§ (a) and (b) is set forth below:

| Article XIX, **Classification**, Section (a), <u>Working in Classification</u> | An Employee shall normally be assigned to duties customarily involved with his regular classified job in accordance with the following principles.<br><br>ECF No. 19-1 at 65. |
| --- | --- |
| Article XIX, **Classification**, Section (b), <u>Classification Requirement</u> | Within sixty (60) days of his employment or within sixty (60) days of the effective date of this Agreement, whichever is earlier, each new Employee -- unless prohibited by law -- shall be classified in a regular, recognized occupation. Failure to so classify such new Employee will result in automatic classification at the rate which is the highest rate for any work performed during the period since he was employed and has not been classified. Nothing in this section, however, shall be understood to require double manning of jobs or prevent return of an Employee to his usual classification following temporary assignment to another job.<br><br>ECF No. 19-1 at 65. |

Upon careful review of Article IV; Article XIX, §§ (a), (b); and the CBA as a whole, the Court concludes that this text does not require "interpretation" to determine the amount that Gibel may be owed in overtime wages.

In the Complaint, Gibel makes no allegations contesting his job classification or asserting that he should have been paid a higher hourly rate or any type of holiday pay. ECF No. 1-1; ECF No. 29 at 17. If he was, such claims may have fallen within the four corners of the CBA. However, as the Complaint stands, Gibel only alleges that he did not receive compensation for hours worked, as the PMWA requires. ECF No. 1-1 ¶ 24. Gibel further clarifies in the Brief in Opposition that to calculate unpaid wages, he will consult payroll and timekeeping data for himself and members of the putative class. ECF No. 29 at 17.

Iron Cumberland relies on an opinion from the United States Court of Appeals for the First Circuit, <u>Rose v. RTN Fed. Credit Union</u>, 1 F.4th 56 (1st Cir. 2021), to argue that this Court must interpret the CBA to determine Gibel's rate of pay. In <u>Rose</u>, the plaintiff "sought recovery of compensation for unpaid wages and expenses, as well as unpaid overtime" as a result of the plaintiff's employer requiring her to report to a location that increased her usual commute by about one hour each way. <u>Id.</u> at 59. While the plaintiff alleged her claims arose exclusively under state law, the First Circuit determined that the CBA must be interpreted to analyze the "temporary transfer" provision, as well as to determine her rate of pay. <u>Id.</u> at 62. This rendered her claims preempted by the Section 301. <u>Id.</u>

<u>Rose</u> is distinguishable from applicable Third Circuit case law in <u>Bell v. Southeastern Pennsylvania Transportation Authority</u>, 733 F.3d 490 (3d Cir. 2013). In that case, the plaintiffs (bus drivers and trolley operators) brought a claim under the FLSA for payment of time spent on "pre-trip" inspections. <u>Id.</u> at 491. The defendant maintained that the claim was dependent on a disputed interpretation of a CBA. <u>Id.</u> The Third Circuit held that resolution of the plaintiffs' claim did not hinge on the interpretation of the CBA; instead, it

> require[d] a factual determination of the amount of time Operators are required to work prior to their scheduled start, and a legal determination regarding whether this time is (1) compensable and (2) subject to the overtime provisions of the FLSA. 29 U.S.C. § 207(a)(1) . . . . [N]either of these determinations depends on the resolution of a disputed reading of the CBAs.

<u>Id.</u> at 495. <u>See</u> <u>Malone v. United Parcel Serv., Inc.</u>, No. CV 21-3643, 2023 WL 3362588, at *5 (E.D. Pa. May 9, 2023) (noting that with <u>Bell</u>, "Third Circuit precedent makes clear that a claim for overtime wages may indeed be wholly independent of a CBA for purposes of § 301 preemption, even where the CBA addresses whether certain work is compensable.").

In the instant case, this Court does not need to perform any type of CBA interpretation similar to what was required by the First Circuit in <u>Rose</u>. Gibel does not contest his rate of pay. "Hours worked" and "overtime compensation" are defined by Pennsylvania regulations. <u>See</u> 43 P.S. § 333.104(c). <u>See also</u> <u>Rolon v. Lackawanna Cnty.</u>, 1 F. Supp. 3d 300, 305 (M.D. Pa. 2014) (holding plaintiff's claim did not require interpretation of a CBA, because "Plaintiff here does not dispute the wage rate he received pursuant to the CBA. Instead, he claims that he worked over forty hours in a work week for the County and that he was not paid time and a half for such work.").

### iii.    The workplace policies at issue are not a part of the CBA.

In the Brief in Opposition, Gibel states he will consult several existing policies and rules from the Cumberland Mine, which are outside of the CBA, in support of his claim. ECF No. 29 at 15.

Iron Cumberland argues in the Reply Brief that the these polices are incorporated by reference into the CBA. ECF No. 32 at 3. It asserts the below provisions of the CBA authorize Iron Cumberland to promulgate workplace rules and polices, thereby incorporating the subsequent polices into the CBA:

| Article IA, **Scope and Coverage**, Section (d), <u>Management of the Mines</u> | The management of the mine, the direction of the working force and the right to hire and discharge are vested exclusively in the Employer.<br><br>ECF No. 19-1 at 12. |
|---|---|
| Article III, **Health and Safety**, Section (g), <u>Safety Rules and Regulations</u> | Reasonable rules and regulations of the Employer, not inconsistent with federal and state laws, for the protection of the persons of the Employees and the preservation of property shall be complied with.<br><br>After the Effective Date of this Agreement, at least ten (10) days prior to the implementation of any new or revised safety rule or regulation, the Employer shall provide copies of the proposed rule or regulation to the Mine Health and Safety Committee and shall meet and discuss it with Committee members in an attempt to resolve any differences between the parties. If the Committee or any Employee believes that any such new rule or regulation or revision is unreasonable, arbitrary, discriminatory or |

| | adversely affects health or safety, they may file and shall process a grievance.<br><br>ECF No. 19-1 at 22. |
|---|---|

ECF No. 32 at 4, n. 11.

"It is a general rule of law that where a contract refers to and incorporates the provisions of another, both shall be construed together." Shehadi v. Northeastern Nat'l. Bank, 378 A.2d 304, 306 (Pa. 1977). But "[f]or a separate document to be successfully incorporated by reference, the original contract must '[make] clear reference to [the] separate document,' enabling 'the identity of the separate document' to be ascertained." Materials Handling Enterprises, Inc. v. Atlantis Techs., LLC, 563 F. Supp. 3d 387, 392 (W.D. Pa. 2021) (quoting Standard Bent Glass Corp. v. Glassrobots Oy, 333 F.3d 440, 447 (3d Cir. 2003)).

In the instant case, the Court has carefully reviewed the eight policies Gibel attached to the Response to Defendant's Concise Statement of Material Facts and has found that these policies are not incorporated by reference not the CBA. These policies are:

- Acknowledgement of Receipt of Hourly Orientation Manual, ECF No. 30-2 at 2;
- Tardiness Policy, ECF No. 30-3 at 2;
- Facial Recognition Procedures, ECF No. 30-4 at 2;
- Facial Recognition Scanning Policy, ECF No. 30-4 at 3;
- Mandatory Personal Protective Equipment, ECF No. 30-5 at 2;
- New Company Issued Tracker/Radio Communication System Policy, ECF No. 30-6 at 2;
- Injury Prevention Program, ECF No. 30-7 at 2-3; and
- Reflective Material Policy, ECF No. 30-8 at 2-3.

Only three of the eight policies reference the CBA. The Acknowledgement of Receipt of Hourly Orientation Manual states that the signatory understands that he or she will be subject to eighteen

different policies, including "Article XXII(i) – Attendance Control."[5] ECF No. 30-2 at 2. The Tardiness Policy states that, "Management further reserves the right to change this policy at any time and at its discretion in accordance with the terms of the [CBA]." ECF No. 30-3 at 2. The Injury Prevention Program cites the CBA regarding the proper procedure for suspending an employee who fails to comply with the policy. ECF No. 30-7 at 3.

The CBA does not make "clear reference" to any of the eight specific policies Gibel cites, such that the identity of the polies may be ascertained in the CBA. Standard Bent Glass Corp., 333 F.3d at 447. Moreover, the portions of the CBA cited by Iron Cumberland do not contain language specifically incorporating the additional policies and procedures by reference into the CBA, whereas other Sections of the CBA explicitly incorporate outside documents. See Art. XX, "Health, Retirement and Other Benefits," § (a), "General Purpose," ECF No. 19-1 at 66 ("The [health, retirement, and other benefits] plans are incorporated by reference and made a part of this Agreement."); Art. XXI, "Surface Mines," § (e) "Special Health and Safety Problems in Surface Mines," id. at 85 ("Blasting activities shall be performed in accordance with applicable federal and state laws and regulations which are incorporated herein by reference."). There is a clear difference between external documents that were incorporated by reference into the CBA when compared to the policies at issue in the instant case.

Iron Cumberland points to the Third Circuit case Johnson v. NBC Universal, Inc., 409 Fed. Appx. 529 (3d Cir. 2010), to establish that the policies and rules promulgated by Iron Cumberland were incorporated by reference into the CBA. ECF No. 32 at 4, n. 11. In Johnson, the plaintiff sued his employer for violating its Policy Against Harassment, a policy that he argued was outside of

---

[5] The Acknowledgement of Receipt of Hourly Orientation Manual does not clarify that "Article XXII(i) – Attendance Control" is part of the CBA, though that section is contained in the CBA. ECF No. 30-2 at 2; ECF No. 19-1 at 96.

the applicable CBA. Id. at 530. The defendant employer argued that the plaintiff's claims were preempted by the CBA. Id. Of note, the CBA "authorized the Union to directly negotiate form deal memoranda on behalf of its members with employers covered by the CBA. Deal memos are signed by the employee and a specific employer and contain additional employment provisions specific to the employer." Id. at 530. The Court held that the three documents at issue – the CBA, the Policy Against Harassment, and a deal memo – were all interrelated and must be interpreted together. "[T]he Third Circuit relied on specific language in both the specific contract and collective bargaining agreement, which, when read jointly, indicated that the [deal memo] could not be interpreted independently." Costa v. Verizon New Jersey, Inc., 936 F. Supp. 2d 455, 460-61 (D.N.J. 2013). The relevant deal memo stated, "This deal memo and any applicable collective bargaining agreement ('CBA') shall constitute our full understanding and shall supersede any oral or written terms not specifically set forth on this memo or in its attachments." Id. at 531. The deal memo also specifically listed and incorporated the Policy Against Harassment by reference. Id. In the instant case, none of the eight polices at issue explicitly incorporate the CBA in the manner that the deal memo did in Johnstown.

Iron Cumberland's argument regarding these policies is a retroactive attempt to add extrinsic documents to the CBA that were not specifically referenced in the CBA. The policies also do not explicitly state they are part of the CBA. Accordingly, the policies that Gibel intends to rely on are not a part of the CBA, and his claim is not preempted on this ground.

### b.    Hours Worked

Iron Cumberland asserts that, independent of its arguments regarding "unpaid wages" and "overtime wages," Gibel's claim is also preempted because the Court must interpret the CBA to determine if the uncompensated activities constitute "hours worked" and whether Gibel was

"required" to be on the premises while performing those activities. ECF No. 21 at 12, 15. Iron

Cumberland cites three provisions of the CBA that it avers must be interpreted to resolve Gibel's

claim (in addition to Article IV, "Wage and Hours," as discussed in Section III.C.2.a.ii.):

| Article III, **Health and Safety**, Section (m), <u>Safety Equipment and Protective Clothing Allowance</u> | Safety equipment and devices, including electric cap lamps, self-rescuers, personal ear plugs, prescription safety glasses exclusive of eye examination costs, nonprescription safety glasses or goggles, and knee pads, shall be furnished by the Employer without charge. The Employee shall use and take reasonable care of equipment provided by the Employer. The Employer shall not be required to provide personal wearing apparel such as clothing, shoes, boots where worn as part of normal footwear, hats, belts, and gloves. Instead of supplying such personal wearing apparel, the Employer shall pay each Employee an annual protective clothing allowance. The protective clothing allowance will be $335 during each of the years 2021, 2022, 2023, 2024 and 2025, payable to each active Employee on the first payday following January 1 of each year.<br><br>A new Employee will be entitled to the appropriate allowance on the first payday following his employment. No Employee shall be entitled to more than one clothing allowance during any contract year. Hip boots or waders shall be kept by the Employer at the mine and issued for use on the job to the Employee as unusual circumstances warrant.<br><br>ECF No. 19-1 at 25. |
| Article VIII, **Starting Time**, Section (a), <u>Shift Starting Time</u> | Each shift shall have a regular starting time established in accordance with past practice and custom.<br><br>ECF No. 19-1 at 33. |
| Article XXII, **Miscellaneous**, Section (a), <u>Bathhouse</u> | The Employer shall provide bathhouse facilities for all classified Employees complying with the standards established in regulations promulgated by the U.S. Department of Labor under the Federal Mine Safety & Health Act of 1977. It shall be the responsibility of the Employer to see that bathhouse facilities are maintained in clean and sanitary condition. There shall be no charge by the Employer for use of a bathhouse or washroom. The Employer will furnish soap in the bathhouse or washroom. The bathhouse shall be heated sufficiently to dry the Employee's working clothes. Where an Employer has successfully petitioned for modification of the mandatory health and safety standards relating to bathhouses and washrooms, and is not required to furnish a bathhouse or washroom, the Employer must make other satisfactory arrangements with the UMWA District to compensate the Employees affected.<br><br>ECF No. 19-1 at 95. |

Gibel responds that the activities he alleges were uncompensated in the Complaint – (1) obtaining, donning, doffing, and storing PPE at the locker room, and (2) walking within the Cumberland Mine facility between the entrance of the facility, locker room, and his assigned work location – do not require interpretation of the CBA. ECF No. 29 at 14-16. The right to compensation for these activities is established under the PMWA, not the CBA. Id. at 14. In support of this claim, Gibel will rely on the testimony of Vice President of Human Resources/Labor Relations Dan Lhota and the policies outside of the CBA discussed in Section III.C.2.a.iii to argue that the aforementioned activities fall within the PMWA's definition of compensable time. Id. at 15.

Upon careful review, the Articles cited by Iron Cumberland do not require interpretation to resolve Gibel's claim. Article III, Section (m), "Safety Equipment and Protective Clothing Allowance," does not speak to whether the PPE must be donned or doffed on the premises. Article XXII, Section (a), "Bathhouse" only specifies that a bathhouse must be provided, not whether it must be used. Silence as to an issue does not mean that interpretation is required. For example, in Beauregard, the plaintiff contended that pre- and post-shift donning and doffing of PPE were compensable activities. Id. at *9-10. The Court held

> [The CBA] does not state whether employees must don and doff this PPE at the facility. The [CBA] is thus silent as to whether any of the challenged pre- and post-shift activities are compensable "hours worked." In other words, with respect to the third element of [plaintiff's] PMWA claim, there is nothing in the [CBA] for the Court . . . to interpret. Resolution of this element will ultimately require the Court to look beyond the [CBA]. That task . . . will not involve contractual interpretation.

Id.; see also Guidas, 2024 WL 2729905, at *10 (holding the same).

Similarly, the CBA does not specify a precise shift starting time. Gibel avers that he will consult shift schedules and other policies addressing the start and end of the compensable day.

ECF No. 29 at 18. Iron Cumberland also asserts that to understand the shift starting time, the Court must interpret the customs and practices of the company and union. ECF No. 21 at 16. By Iron Cumberland's own admission, such interpretation is outside of the CBA. Contrary to Iron Cumberland's argument, when resolution of an element will require a court to look beyond a CBA, as in the instant case, the CBA does not require interpretation, "because the determination will be made by looking at the facts and circumstances of the employment." Guidas, 2024 WL 2729905, at *10.

Iron Cumberland also argues that travel to the locker room is not included in "hours worked" if travel is not part of the employee's duties. ECF No. 21 at 17 n. 7. However, the PMWA requires employees to be paid for all "time during which an employee is required by the employer to be **on the premises of the employer**" under 34 Pa. Code § 231.1(b) (emphasis added), which would include such walking time.

Other courts have held in similar situations, that even if a CBA required interpretation on a provision regarding walking time (which, to be clear, it does not in the instant case), such interpretation

> would only reveal whether walking time is compensable **under the CBA** . . . . [Plaintiff's] claim, however, is that even if this time is not compensable under the CBA, it is nonetheless compensable under the PMWA. As discussed above, the PMWA creates rights that are independent of any CBA, meaning that an employer who fully complies with the terms of a CBA may nonetheless run afoul of the PMWA

Malone, 2023 WL 3362588, at *7 (emphasis in original). See also Larue, 2020 WL 5747818, at *10-12 (finding no LMRA preemption where the plaintiff's claim was that travel and donning and doffing time that was excluded from the scope of compensation under the applicable CBA was nonetheless compensable under the PMWA). Accordingly, Gibel's claim regarding walking time is not preempted by Section 301.

Iron Cumberland further relies on Pa. Fed'n Brotherhood Maint. Way Emps. v. Nat'l R.R. Passenger Corp. ("Amtrak"), 989 F.2d 112 (3d Cir. 1993) and Smith v. Allegheny Technologies, Inc., 754 F. App'x 136 (3d Cir. 2018) for the proposition that a determination of whether workers are required to be on the premises of the employer requires interpretation of the relevant CBA. ECF No. 21 at 13-15. But this reliance is misplaced. Amtrak, 989 F.2d at 115, stands for the proposition that a CBA may need to be interpretated to resolve a claim, and, when it does, such claim is preempted. However, as the Third Circuit distinguished in Bell, 733 F.3d at 495, not all inquiries regarding "hours worked" require an interpretation of the CBA. And in Smith, 754 F. App'x at 141, the Third Circuit held that the court must look at employment agreements to determine whether the employees were required to be on the premises for post-shift activities when resolving a motion to dismiss. Those underlying employment agreements were not CBAs, nor were they attached to the complaint, so the Court did not opine whether those agreements would require interpretation as opposed to consultation. Id. Further, as this Court has noted:

> [Amtrak and Smith] do **not** hold that [demining an employee's required activities and duties] will require interpretation – as opposed to mere consultation – of an employment agreement in each and every case. Nor do they foreclose the equally commonsense proposition that, in some cases, determining the full extent of an employee's required activities or duties may call for consideration of facts and circumstances beyond the four corners of a written agreement. For example, an employment agreement might set forth the basic demands of a job, while additional materials – such as written policy statements, bulletins, or emails, or oral commands or instructions – might set forth the specific day-to-day demands. And where an employment agreement is silent (rather than ambiguous) as to certain job requirements, a court cannot be said to 'interpret' the agreement by making that determination of silence and then looking to external, non-contractual sources of those alleged requirements. See Kline v. Sec. Guards, Inc., 386 F.3d 246, 256 (3d Cir. 2004) ("[T]he mere fact that we must look at the CBA in order to determine that it is silent on any issue relevant to [a plaintiff's] state claims does not mean that we have 'interpreted' the CBA.").

Beauregard, 2022 WL 2293969, at *9 (emphasis in original).

Accordingly, the CBA will not require interpretation to resolve whether Gibel was compensated for all hours worked.

### c.    Arbitration

In the supporting Brief, Iron Cumberland fleetingly mentions that "[t]he CBA requires that all disputes be resolved through mandatory arbitration."[6] ECF No. 21 at 6. Under the CBA, the arbitration process is limited to "[d]isputes arising under this Agreement." ECF No. 19-1 at 93. As Gibel is not asserting a claim for breach of the CBA, this argument fails. As this Court held in Ballard, 2022 WL 4464959, at *6:

> [A]lthough the CBA may address the subject of Plaintiff's compensation and job duties . . . that fact alone does not dictate that Plaintiff's claim is subject to mandatory arbitration under the CBA . . . . As the Court has already determined that Plaintiff is not alleging a violation of the CBA, nor must the Court interpret the CBA in considering Plaintiff's claim, the Court finds, accordingly, that Plaintiff is not bound by the CBA's arbitration provision in resolving his claim and may pursue his PMWA claim in court.

The same result is warranted here. Gibel's claim is not compelled to be resolved through arbitration.

### D.    CONCLUSION

Viewing the record as a whole and considering the facts in the light most favorable to Plaintiff Gibel, Defendant Iron Cumberland has not met its burden to show that Gibel's PMWA claim fails as a matter of law. The Court concludes that Gibel's claim is not barred by Section 301 of the LRMA. For the foregoing reasons, it is respectfully recommended that Defendant Iron Cumberland's Motion for Summary Judgment, ECF No. 20, be denied.

---

[6] The Court notes that Iron Cumberland did not fully address this issue in the Brief in support of the Motion or the Reply Brief. ECF Nos. 21, 32. Instead, it made a single brief statement inferring that Gibel's claim should be subject to arbitration. ECF No. 21 at 6.

In accordance with the Magistrate Judges Act, 28 U.S.C. § 636(b)(1), and Local Rule 72.D.2, the parties are permitted to file written objections within fourteen days, or seventeen days for unregistered ECF Users. Objections are to be submitted to the Clerk of Court, United States District Court, 700 Grant Street, Room 3110, Pittsburgh, PA 15219. Failure to timely file objections will waive the right to appeal. Brightwell v. Lehman, 637 F.3d 187, 193 n. 7 (3d Cir. 2011). Any party opposing objections may file their response to the objections within fourteen (14) days thereafter in accordance with Local Civil Rule 72.D.2.

Dated: August __7__, 2024                BY THE COURT,

                                         MAUREEN P. KELLY
                                         UNITED STATES MAGISTRATE JUDGE

cc:    Honorable W. Scott Hardy
       United States District Judge

       All counsel of record via CM/ECF

25