IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| CAMERON GIBEL, | ) |
| Plaintiff, | ) ) ) |
| v. | ) Civil Action No. 23-2050 ) |
| IRON CUMBERLAND, LLC, | ) ) ) |
| Defendant. | ) |

**MEMORANDUM OPINION**

Presently before the Court is Defendant Iron Cumberland, LLC d/b/a Iron Senergy's ("Iron Cumberland") Motion for Certification for Interlocutory Appeal and to Stay Pending Appeal Pursuant to 28 U.S.C. § 1292(b) and Federal Rule of Appellate Procedure 5(a)(3) (Docket No. 39), wherein Iron Cumberland seeks to appeal the Court's September 23, 2024 Memorandum Order (Docket No. 37) overruling Iron Cumberland's Objections (Docket No. 35) to the Report and Recommendation ("R & R") (Docket No. 34) and adopting Magistrate Judge Kelly's recommendation that Iron Cumberland's Motion for Summary Judgment be denied. Plaintiff Cameron Gibel ("Gibel") filed an Opposition to Iron Cumberland's motion (Docket No. 44), to which Iron Cumberland filed a Reply (Docket No. 45). For the reasons set forth below, Iron Cumberland's motion will be DENIED.

**I.     BACKGROUND**

Gibel's Class Action Complaint asserts a claim for unpaid wages for pre- and post-shift time pursuant to the Pennsylvania Minimum Wage Act ("PMWA"), 43 P.S. § 333.101 *et seq*. *See* Complaint (Docket No. 1-1).[1] Thereafter, Iron Cumberland filed a Motion for Summary Judgment arguing that Gibel was a union employee covered by a collective bargaining agreement ("CBA")

---

[1]     Gibel subsequently filed an Amended Class Action Complaint. (Docket No. 46).

1

so his PMWA claim is preempted by Section 301 of the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 185(a). (Docket No. 20). Magistrate Judge Kelly's R & R recommended that Iron Cumberland's summary judgment motion be denied, concluding that Gibel's PMWA claim is not preempted by Section 301 of the LMRA because that claim does not require interpretation of the CBA. (Docket No. 34). Iron Cumberland timely objected, arguing first, that Judge Kelly's R & R misapplied the Third Circuit Court of Appeals' holdings in *Pennsylvania Fed'n of Bhd. of Maint. of Way Employees by Dodd v. Nat'l R.R. Passenger Corp. (Amtrak)*, 989 F.2d 112 (3d Cir. 1993), and *Bell v. Southeastern Pennsylvania Transp. Auth.*, 733 F.3d 490 (3d Cir. 2013), and arguing second, that Gibel's claim is preempted even under the R & R's "flawed application of those decisions." (Docket No. 35). This Court overruled Iron Cumberland's objections, adopted the R & R, and denied summary judgment. (Docket No. 37). Iron Cumberland's Motion for Certification for Interlocutory Appeal and to Stay Pending Appeal followed.

## II.   STANDARD FOR CERTIFYING APPEAL OF AN INTERLOCUTORY ORDER

The Court's denial of Iron Cumberland's Motion for Summary Judgment is not a final judgment and is generally not appealable except by interlocutory appeal pursuant to 28 U.S.C. § 1292(b). Only "exceptional circumstances justify a departure from the basic policy of postponing appellate review until after the entry of a final judgment." *Coopers & Lybrand v. Livesay*, 437 U.S. 463, 475 (1978) (cleaned up). *See Milbert v. Bison Lab'ys, Inc.*, 260 F.2d 431, 433 (3d Cir. 1958) ("Congress intended that [S]ection 1292(b) should be sparingly applied . . . only in exceptional cases where an intermediate appeal may avoid protracted and expensive litigation and [it] is not intended to open the floodgates to a vast number of appeals from interlocutory orders in ordinary litigation"); *see also Livingstone v. Haddon Point Manager, LLC*,

Civil No. 19-13412, 2023 WL 8927313, at *6 (D.N.J. Dec. 27, 2023) ("Interlocutory appeal is used sparingly and only in exceptional cases where the interests cutting in favor of immediate appeal overcome the presumption against piecemeal litigation.").

The following criteria must be met for the Court to exercise its discretion to certify its Order for an immediate petition for allowance of appeal to the Court of Appeals: (i) the order must involve a controlling question of law; (ii) it must offer a substantial ground for difference of opinion as to its correctness; and (iii) if appealed immediately, it would materially advance the ultimate termination of the litigation. *Katz v. Carte Blanche Corp.*, 496 F.2d 747, 754 (3d Cir. 1974) (en banc); *Ravotti v. OneJet, Inc.*, Civil Action No. 18-1598, 2021 WL 4391284, at *2 (W.D. Pa. Sept. 24, 2021). Even if the criteria are met, certification is not mandatory as permission to appeal is wholly within the discretion of the courts. *Bachowski v. Usery*, 545 F.2d 363, 368 (3d Cir. 1976) (citing *Katz*, 496 F.2d at 754).

Here, Iron Cumberland asserts that all three criteria are met and urges the Court to certify an interlocutory appeal. First, Iron Cumberland asserts that the Court's Memorandum Order finding that Gibel's claim under the PMWA is not preempted by Section 301 of the LMRA is a controlling issue of law in this case. Second, Iron Cumberland asserts that there is a substantial ground for difference of opinion based on "conflicting interpretations" of the correct legal standard reflected in the Court's determination that Gibel's PMWA claim is not founded on rights created by the parties' CBA, that applicable workplace policies at issue are not part of the CBA, and that the CBA does not require interpretation to determine the amount of unpaid wages owed pursuant to the PMWA. Third, Iron Cumberland asserts that an immediate appeal would materially advance the ultimate termination of this litigation. Gibel does not contest the first and third criteria that the Court's Summary Judgment Order involves a controlling question of law and that an immediate

3

appeal would materially advance the ultimate termination of the litigation. (Docket No. 44 at 5, n. 3). However, Gibel contends that Iron Cumberland cannot satisfy the second criterion, namely, that the controlling issue of law offers a substantial ground for difference of opinion as to its correctness. The Court agrees with Gibel and will not exercise its discretion to certify an interlocutory appeal.

### III. DISCUSSION

For purposes of 28 U.S.C. § 1292(b), substantial grounds for difference of opinion exists where there is genuine doubt or conflicting precedent as to the correct legal standard, conflicting and contradictory opinions, or the absence of controlling law on a particular issue. *See e.g.*, *Nationwide Life Ins. Co. v. Commonwealth Land Title Ins. Co.*, Civil Action No. 05-281, 2011 WL 1044864, at *3 (E.D. Pa. March 23, 2011); *Cestra v. Mylan, Inc.*, Civ. No. 14-825, 2015 WL 2455420, at *3 (W.D. Pa. May 22, 2015); *Southeastern Pennsylvania Transp. Auth. v. Orrstown Fin. Servs., Inc.*, No. 1:12-cv-00993, 2020 WL 4041049, at *8 (M.D. Pa. July 17, 2020) (stating that the "relevant question is whether reasonable jurists might disagree as to the proper resolution of a disputed issue"); *Pennsylvania v. Navient Corp.*, Civ. No. 3:17-cv-1814, 2019 WL 1052014, at *2 (M.D. Pa. March 5, 2019) (stating that "[q]uestions of first impression can present substantial grounds for difference of opinion").

As noted in Judge Kelly's R & R and as adopted by this Court, the United States Supreme Court has long held that "application of state law is pre-empted by § 301 of the [LMRA] only if such application requires the interpretation of a collective-bargaining agreement." *Lingle v. Norge Div. of Magic Chef, Inc.*, 486 U.S. 399, 409-10 and 413 (1988) (noting, further, that "even if dispute resolution pursuant to a collective-bargaining agreement, on the one hand, and state law, on the other, would require addressing precisely the same set of facts, as long as the state-law claim

can be resolved without interpreting the agreement itself, the claim is 'independent' of the agreement for § 301 pre-emption purposes"). The Supreme Court has also held that mere consultation of a collective bargaining agreement does not trigger Section 301 preemption, expressly stating: "when the meaning of contract terms is not the subject of dispute, the bare fact that a collective-bargaining agreement will be consulted in the course of state-law litigation plainly does not require the claim to be extinguished." *Livadas v. Bradshaw*, 512 U.S. 107, 124 (1994). Indeed, the Supreme Court held that Section 301 preemption is limited to times when the resolution of a state-law claim is "substantially dependent upon analysis of the [collective bargaining agreement's] terms." *Allis-Chalmers Corp. v. Lueck*, 471 U.S. 202, 220 (1985). The term "substantially dependent" has been interpreted as meaning "inextricably intertwined." *Id*. at 213. Iron Cumberland's motion is premised on this preemption standard being the controlling issue of law under 28 U.S.C. § 1292(b).

The correctness of this controlling issue of law, *i.e.*, the above-referenced standard for discerning Section 301 preemption of state-law claims, is firmly established by the Supreme Court and is not in dispute. *Lividas*, 512 U.S. 107; *Lingle*, 486 U.S. 399; *Allis-Chalmers Corp*., 471 U.S. 202. *See e.g.*, *Ballard v. BHI Energy, Inc.*, Civil Action No. 22-115, 2022 WL 4464959, at *4 (W.D. Pa. Sept. 26, 2022). Notwithstanding these controlling Supreme Court precedents, Iron Cumberland posits, nonetheless, that there exists one or more substantial grounds for a difference of opinion. First, Iron Cumberland contends that the Court misapplied precedents from the Third Circuit when determining that the CBA in this case did not need interpreted to resolve Gibel's PMWA claim. Second, Iron Cumberland contends that a difference of opinion exists for determining whether certain workplace policies should be deemed part of the CBA and subject to interpretation, thus requiring preemption.

In essence, Iron Cumberland takes issue with the Court's application of the Supreme Court's well-established Section 301 preemption standard, not the standard itself, when determining that Gibel's PMWA claim is not founded on contract rights created by the CBA which require interpretation to determine the amount of unpaid wages purportedly owed. In support of its contention that a substantial ground for difference of opinion exists here, Iron Cumberland cites *Amtrak*, *Smith*,[2] and other cases[3] holding that interpretation of a CBA was necessary to discern an employee's compensable job duties. Iron Cumberland also points generally to seven district court decisions within the Third Circuit (cited in Gibel's brief) holding that the LMRA does not preempt state wage claims in those particular cases, despite the Third Circuit's holding in *Amtrak*, for the proposition that because "preemption is so frequently litigated [it] demonstrates the need for clarification of the *Amtrak* decision." (Docket No. 45 at 2). Iron Cumberland's arguments are

---

[2] In *Smith v. Allegheny Techs., Inc.*, 754 F. App'x 136 (3d Cir. 2018), a panel of the Third Circuit analyzed when travel time is an employee's compensable duty under the PMWA, but it does not involve the application of *Lingle* and *Livadas* to determine whether Section 301 of the LMRA preempts such state-law claims. Even so, both *Amtrak* and *Smith* "stand for the commonsense proposition that an employee's required activities and duties may be deduced by looking to an applicable employment agreement or collective bargaining agreement. But those decisions do *not* hold that such an exercise will require interpretation – as opposed to mere consultation – of an employment agreement in each and every case." *Beauregard v. Broadway Electric Service Corp.*, Civil Action No. 21-1600, 2022 WL 2293969, at 9 (W.D. Pa. June 24, 2022). Similarly, although the parties spare over the import of *Bell* and *Vadino v. A. Valey Engineers*, 903 F.2d 253 (3d Cir. 1990), where courts analyze the interplay between the Fair Labor Standards Act ("FLSA") and applicable collective bargaining agreements, neither decision involves the controlling legal issue applicable here, namely, whether a *particular* CBA provision must be interpreted or merely consulted for purposes of determining whether *this* plaintiff's PMWA claim is preempted by Section 301 of the LMRA. Nonetheless, both *Vadino* and *Bell* provide helpfully contrasting examples for when a statutory wage claim is inevitably intertwined with the interpretation of a CBA, as in *Vadino*, and when it is not, as in *Bell*.

[3] *See* Docket No. 39 at 4 (citing *Wisconsin Cent. Ltd. v. Shannon*, 516 F. Supp. 2d 917, 923 (N.D. Ill. 2007); *Townsend v. BC Natural Chicken LLC*, Civil Action No. 06-4317, 2007 WL 442386, at *5 (E.D. Pa. Feb. 2, 2007); *Burgos v. Exec. Air, Inc.*, 914 F. Supp. 792, 796 (D.P.R. 1996)). The Court notes that *Townsend* is a uniquely distinguishable non-state law preemption case because it involves Section 3(o) of the FLSA, 29 U.S.C. § 203(o), which "provides an exception to the general rule for employees under collective bargaining agreements" and looks to "the express terms of or by custom or practice under a bona fide collective bargaining agreement applicable to the particular employee." 29 C.F.R. § 785.26.

misplaced. *Amtrak* is simply one of several examples in which a court assesses "'on a case-by-case basis' – whether the state-law claim 'confers nonnegotiable state-law rights on employers or employees independent of any right established by contract, or, instead, whether evaluation of the state law claim is inextricably intertwined with consideration of the terms of the labor contract.'" *Guidas v. U.S. Steel Corp.*, Civil Action No. 24-305, 2024 WL 2729905, at *7 (W.D. Pa. May 28, 2024) (citing *Allis-Chalmers Corp.*, 471 U.S. at 213, 220). *Amtrak* and these other cases merely reflect the courts' application of a clear legal standard to the varied factual and contextual circumstances in different cases, and not a genuine doubt or conflicting precedent as to the correct legal standard that these courts must apply. *Nationwide Life Ins. Co.*, 2011 WL 1044864, at *3.

Rather, Iron Cumberland seemingly seeks appellate review of this Court's application of Supreme Court precedent to the facts of record in this case to challenge its determination that Gibel's PMWA claim merely relates to a subject "contemplated by the CBA [*i.e.*, compensation] . . . [not] whether the state claim[] require[s] any *interpretation* of a provision of the CBA." *Guidas*, 2024 WL 2729905, at *8 (citing *Kline v. Sec. Guards, Inc.*, 386 F.3d 246, 256 (3d Cir. 2004) (emphasis in original) (internal citation omitted). Such interpretation would only be warranted when the parties have a specific dispute over the meaning of the agreement's terms or provisions, *id.*, which is not the case here, where "hours worked" and "overtime compensation" are defined by Pennsylvania law, *see* 43 P.S. § 333.104(c), and the calculation of such purportedly unpaid wages can be derived from payroll and timekeeping data. (Docket No. 34 at 14, 16). Gibel raises no dispute over how the CBA's job classification and wage rate provisions are to be interpreted when applied to him, and the Court's references to those provisions are merely consultive and not interpretive. (*Id.* at 13-14).

Next, Iron Cumberland asserts that the Court's determination that certain workplace policies are not incorporated into the CBA is also a matter of substantial ground for difference of opinion. Iron Cumberland cites two out-of-circuit cases in support of this contention. (Docket No. 39 at 4-5) (citing *Mountaineer Gas Co. v. Oil, Chem., & Atomic Workers Int'l Union*, 76 F.3d 606, 610 (4th Cir. 1996) and *Garley v. Sandia Corp.*, 236 F.3d 1200, 1210-11 (10th Cir. 2001). In its Reply, Iron Cumberland further asserts that the lack of Third Circuit precedent governing the relationship between a CBA and the employer's other workplace policies demonstrates a substantial ground for difference of opinion. The Court disagrees.

First, Iron Cumberland does not challenge the applicable legal standards used by the Court for determining whether employment policies are incorporated into the CBA (Docket No. 34 at 16-19), but instead challenges the Court's application of such standards based on the factual record in this case.

Second, Iron Cumberland cites *Beidleman v. Stroh Brewery Co.*, 182 F.3d 225, 231 (3d Cir. 1999) to suggest that the Third Circuit "may disagree" with this Court's decision not to incorporate those workplace policies into the CBA. (Docket No. 45 at 5 n. 11). However, *Beidleman* is not directly pertinent here because it involved an agreement negotiated by an employer and its union concerning the effects of a plant closure on bargaining unit employees after their CBA had expired even though this "closing agreement" was not a "'collective bargaining agreement' *per se*." 182 F.3d at 231. Here, there is no evidence in the record to establish that the workplace policies at issue were negotiated by and between Iron Cumberland and Gibel's union. Mere notice and discussion of draft policies, as outlined in the Lhota Declaration (Docket No. 31), are not the same thing as a bargained-for agreement as contemplated by Section 301 of the LMRA. Rather, these workplace policies were issued by Iron Cumberland pursuant to its management

8

rights authority[4] derived from specified provisions in the CBA (Article IA, Section (d), and Article III, Section (g)) (*see* Docket Nos. 19-1 at 12, 22), and those provisions are not in dispute and thus need not be interpreted to discern Gibel's PMWA claim. And even if those workplace policies should have been incorporated into the CBA, the Court still did not need to *interpret* them for the same reasons set forth above concerning the CBA itself.

Overall, Iron Cumberland has not identified a "genuine doubt or conflicting precedent as to the correct legal standard" itself. *Nationwide Life Ins. Co.*, 2011 WL 1044864, at *3 (citation omitted). Regardless, the issue here is not a difficult and pivotal question of law not settled by controlling authority, *id.* (citing *McGillicuddy v. Clements*, 746 F.2d 76, 76 n.1 (1st Cir. 1984)), that constitutes an exceptional circumstance justifying a departure from the basic policy of postponing appellate review until after the entry of final judgment. *Coopers & Lybrand*, 437 U.S. at 475.

### IV. CONCLUSION

The requirements for interlocutory review under 28 U.S.C. § 1292(b) are not present here. Furthermore, the Court, in the exercise of its discretion, finds that this action is not that "exceptional case" justifying certification for interlocutory appeal.

An Order consistent with this Memorandum Opinion follows.

---

[4] A management rights clause is a "contractual provision that authorizes an employer to act unilaterally, in its discretion, with respect to a mandatory subject of bargaining." *Alaris Health at Boulevard East v. National Labor Relations Board*, 123 F.4th 107, 114 n. 3 (3d Cir. 2024) (citing *E.I. Dupont De Nemours, Louisville Works*, 355 N.L.R.B. 1084, 1085 (2010), *enforcement denied on other grounds*, 682 F.3d 65 (D.C. Cir. 2012), and *Chi. Trib. Co. v. NLRB*, 974 F.2d 933, 937 (7th Cir. 1992) ("The union had a statutory right to bargain over the terms of employment, ... but it gave up that right, so far as the subjects comprehended by the management-rights clause were concerned, by agreeing to the clause.")).

*s/ W. Scott Hardy*
W. Scott Hardy
United States District Judge

Dated: March 7, 2025

cc/ecf: All counsel of record